**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No.  04-cv-0782-REB-CBS

TEACHERS' RETIREMENT SYSTEM OF LOUISIANA, the Retirement System for
Teachers employed by the State of Louisiana,

     Plaintiff,

v.

QWEST COMMUNICATIONS INTERNATIONAL INC., a Delaware corporation having
its principal office and place of business in Denver, Colorado, et al.,

     Defendants.

---

## ORDER CONCERNING DEFENDANTS' MOTIONS TO DISMISS

---

**Blackburn, J**

     This matter is before me on the following motions: 1) defendant Qwest

Communications International, Inc.'s motion to dismiss [#37], filed September 7, 2004;

2) the individual defendants' motion to dismiss [#54], filed November 9, 2004; and

3) defendant Douglas Hutchins' motion to dismiss [#61], filed December 16, 2004. The

motions are granted in part and denied in part.

## I.  JURISDICTION

     The motions to dismiss concern claims asserted by plaintiff Teachers'

Retirement System of Louisiana (TRSL).  TRSL alleges claims under § 10(b), § 18(a),

and § 20(a) of the Securities Exchange Act of 1934 (the 1934 Act).  I have jurisdiction

over these claims under 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.  The plaintiff asserts

claims also under Colorado law.  I have supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367.

## II.  FACTS

The complaint addressed in the motions to dismiss is the plaintiff's Amended Complaint, filed July 26, 2004.  I will refer to this document as the Complaint, and I will refer to specific paragraphs by their number (¶ 1).  Qwest is a publically traded communications company which provides telephone service and a wide variety of other communications services in the United States and internationally.  TRSL alleges that Qwest disseminated false and misleading reports about Qwest's financial performance, and that TRSL purchased Qwest stock in reliance on these false reports.

TRSL alleges that certain Qwest financial reports were false because Qwest and the individual defendants fraudulently manipulated two transactions to permit Qwest to improperly recognize revenue on those transactions.  These transactions are known as the Genuity transaction and the ASFB transaction.  TRSL says its complaint is limited to the alleged improper manipulation of the Genuity and ASFB transactions.

TRSL alleges that Qwest improperly reported 100 million dollars in revenue in the third quarter of 2000 based on the Genuity transaction.  ¶ 134 - 40.  TRSL says this improper recognition of revenue permitted Qwest to report a 12.4 percent increase in revenue for the third quarter of 2000, as compared to the third quarter of 1999.  ¶ 135. "QWEST was thus able to claim that it met QWEST's prediction of double digit growth every quarter."  *Id*.  A proper report of revenue from the Genuity transaction would have resulted in reported revenue growth of 9.8 percent, which according to TRSL

would constitute "a material variation from the earlier predictions of QWEST management."  ¶ 136.

TRSL contends also that Qwest improperly reported 33.6 million dollars in sales revenues based on the ASFB transaction in the second quarter of 2001.  TRSL says this improper recognition of revenue permitted Qwest to report a 12.2 percent increase in revenue for the second quarter of 2001, as compared to the third quarter of 1999. ¶ 191.  This met Qwest's previous estimate of 12 to 13 percent revenue growth for that quarter.  *Id*.  A proper report of revenue from the ASFB transaction would have resulted in reported revenue growth of 11.5 percent, according to TRSL.  ¶ 192.

According to TRSL, the recognition of revenue on these transactions was contrary to Generally Accepted Accounting Principles (GAAP).  GAAP is a widely recognized set of accounting principles, standards, and procedures.  However, GAAP is not "a canonical set of rules that will ensure identical accounting treatment of identical transactions by all accountants."  ***Thor Power Tool Co. v. C. I. R.***, 439 U.S. 522, 544 (1979).  Rather, GAAP generally tolerates a range of reasonable treatments.

Based on these allegations, TRSL asserts six claims against all of the defendants in its complaint:

1) A claim under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b);

2) A claim under § 18(a) of the 1934 Act, 15 U.S.C. § 78r(a);

3) A claim under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a);

4) A claim under the Colorado Securities Act, §§11-51-501 & 604, C.R.S.;

5) A claim for negligent misrepresentation; and

6) A claim for common law fraud and deceit.

Qwest has filed a motion to dismiss each of the plaintiff's claims.  Defendants Weston, Eveleth, Walker, and Treadway have filed a combined motion to dismiss.  Defendant Hutchins has filed a separate motion to dismiss asserting essentially the same grounds asserted by the other individual defendants.  I will refer to the individuals who have filed motions to dismiss collectively as the individual defendants.

### III.  STANDARD OF REVIEW

In their motions to dismiss, the defendants argue that the plaintiff's claims against them must be dismissed because the plaintiff's factual allegations are not sufficient to support the claims asserted, or because the relevant statute of limitations expired before the plaintiff filed its complaint.  For the purpose of ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), the complaint is construed in the light most favorable to plaintiffs, and its allegations are taken as true. ***See, e.g., Daigle v. Shell Oil Co.***, 972 F.2d 1527, 1533 (10th Cir.1992).  In appraising the sufficiency of the plaintiffs' allegations, "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  ***Conley v. Gibson,*** 355 U.S. 41, 45-46 (1957).  With regard to some of the plaintiffs' claims, the defendants argue that the plaintiffs' allegations do not satisfy the particular pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), as stated in 15 U.S.C. § 78u-4(b)(1) and (2).

### IV.  STATUTE OF LIMITATIONS - § 10(b), § 18 (a), AND § 20(a) CLAIMS

Qwest argues that TRSL's claims under § 10(b), § 18(a), and § 20(a) are barred by the applicable statute of limitations.  TRSL's complaint and its argument in response

to Qwest's motion to dismiss clearly indicate that TRSL's claims are limited to alleged fraud based on the Genuity and ASFB transactions.  I conclude that claims limited to these two transactions are not barred by the statute of limitations.

### A. Applicable Period of Limitations

Prior to July 28, 2002, a one year statute of limitations was applicable to claims under § 10(b).  Section 804 of the Sarbanes-Oxley Act extended the applicable statute of limitations for any "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" to the earlier of two years following notice or five years after the occurrence of the facts giving rise to the claim.  28 U.S.C. § 1658 (2004).  The plaintiffs'  § 10(b) claim is subject to this two year statute of limitations because the complaint was filed after July 28, 2002.

Qwest argues that TRSL's § 18 claims are not covered by the two year statute of limitations in  § 1658.  Rather, Qwest argues that § 18(c) of the 1934 Act, which provides for a one year period of limitations for § 18 claims, controls TRSL's § 18 claims.  15 U.S.C. § 78r(c).  I conclude that the two year period of limitations of § 1658 is applicable to ABP's § 18 claims.  The United States Supreme Court has noted that § 18 targets "the precise dangers that are the focus of § 10(b), and the intent motivating (both) sections is the same – to deter fraud and manipulative practices in the securities markets, and to ensure full disclosure of information material to investment decisions." *Musick, Peeler & Garrett v. Employers Ins. of Wausau*,  508 U.S. 286, 296 (1993) (quotation and citations omitted).  Section 1658 applies to private rights of action

involving claims of fraud, deceit, manipulation, or contrivance.  Section 18 easily falls

within these parameters.  The defendants arguments to the contrary are unavailing.

Section 20(a) is a secondary liability provision based on underlying violations of

federal securities laws.  Section 20(a) shares the limitations period of the statute that

defines the underlying violation.  TRSL's § 20(a) claim is based on alleged underlying

violations of sections 10(b) and 18(a).  Thus, the § 20(a) claim is subject to the same

two year period of limitations as the underlying claims.

<u>B.  Events Triggering the Statute of Limitations</u>

In the context of securities fraud, the Tenth Circuit has held that the statute of

limitations begins to run "once the investor, in the exercise of reasonable diligence,

should have discovered the facts underlying the alleged fraud." ***Sterlin v. Biomune***

***Systems***, 154 F.3d 1191, 1201 (10th Cir. 1998).  The standard outlined in ***Sterlin*** and

similar cases is viewed often as a two step process: 1) the date when the plaintiff was

on "inquiry notice" of the possibility of fraud; when there existed "sufficient storm

warnings" to alert a reasonable person to the possibility that misleading statements or

significant omissions had been made; and 2) the period thereafter during which a

diligent investor should have discovered the facts underlying the alleged fraud. ***Id***. at

1202 - 05.  Step two of the ***Sterlin*** analysis does not require that a plaintiff have notice

of the precise contours of the fraudulent scheme.  Rather, discovery of essential facts

indicating that there was or is a fraudulent scheme is all that is required.

Again, TRSL's claims are limited to two discrete transactions undertaken by

Qwest, the Genuity transaction and the ASFB transaction.  TRSL argues that it could

not have discovered the specific facts concerning the Genuity and ASFB transactions

until after the SEC filed its complaint against several individual Qwest officials in *SEC v. Arnold, et al.*, No. 03-CV-328-REB-OES, *Complaint*, filed February 25, 2003.  Qwest argues that TRSL had notice of the alleged accounting issues underlying its federal securities claims by March 11, 2002.  By that date, Qwest notes, at least a dozen lawsuits asserting § 10(b) claims were pending against Qwest, and Qwest had disclosed that the SEC had begun an informal investigation into Qwest's accounting.  In general, these other complaints allege much broader and long-standing schemes to manipulate Qwest's financial picture than that alleged by TRSL.  Qwest does not argue that any of these lawsuits revealed the facts underlying the allegations of fraud concerning the Genuity and ASFB transactions.  Qwest does not state how the facts of these particular transactions could have been known to TRSL before the SEC filed its complaint in *SEC v. Arnold, et al.* on February 25, 2003.

The SEC's February 25, 2003, complaint describes in detail the alleged fraud involved in the Genuity and ASFB transactions.  *SEC v. Arnold, et al.*, No. 03-CV-328-REB-OES, *Complaint*, filed February 25, 2003.  The filing of the SEC complaint is a clear indication that the government agency charged with enforcement of the securities laws had investigated the facts concerning these two transactions, and had concluded that there were sufficient facts to support allegations of securities fraud in a civil case. The SEC complaint describes in detail the two particular transactions which form the basis of the plaintiff's claims in this case, and outlines how those facts are alleged to constitute securities fraud under various federal laws.  The SEC complaint amounts to notice to the plaintiff of the facts underlying the alleged fraud about which they now complain.  For a diligent investor, the filing of the SEC complaint in *SEC v. Arnold, et*

*al.* on February 25, 2003, constitutes clear notice of the facts underlying the alleged fraud in the Genuity and ASFB transactions.  With this notice, the statute of limitations began to run on TRSL's federal securities claims based on the Genuity and ASFB transactions.  The statute of limitations expired two years later, on February 25, 2005. TRSL first asserted its federal securities claims in its amended complaint, filed July 26, 2004, within the two year period of limitations for claims based on the Genuity and ASFB transactions.

I note that this statute of limitations analysis is limited to securities fraud claims based only the Genuity and ASFB transactions.  The fact that TRSL has asserted timely claims that are narrowly focused on these two transactions does not mean that TRSL necessarily will be permitted to expand its claims to include a more broad expanse of events and statements.

<u>C.  Tolling</u>

TRSL has indicated a desire to amend its complaint to add additional claims to its complaint, including reiterations of the claims which have survived motions to dismiss in *In re Qwest*.  It appears that many, and possibly all, of these proposed additional claims, would be barred by the statute of limitations if presented in this case. Because TRSL has indicated a desire to adopt numerous additional claims, and because the parties may raise additional factual contentions concerning the application of the statute of limitations to TRSL's current claims, I will address TRSL's tolling argument briefly.

TRSL claims that the statute of limitations was tolled when the putative class action complaint was filed in *In re Qwest Communications International, Inc.*

*Securities Litigation*, No. 01-cv-01451-REB-CBS.  TRSL is a member of the proposed

class in *In re Qwest*.  TRSL relies on the tolling doctrine established in *American Pipe*

*and Construction Co. v. Utah*, 414 U.S. 538 (1974).[1]  In *American Pipe*, a putative

class action was filed, but class certification was denied eventually.  An individual

plaintiff then sought to intervene, pursuing identical claims, but after the statute of

limitations had expired.  The Court concluded that the statute of limitation on the

individual plaintiff's claims had been tolled while the putative class action was pending.

"(T)he filing of a timely class action complaint commences the action for all members of

the class as subsequently determined." *American Pipe*, 414 U.S. at 550.  The Court

held later that "(o)nce the statute of limitations has been tolled, it remains tolled for all

members of the putative class until class certification is denied.  At that point, class

members may choose to file their own suits or to intervene as plaintiffs in the pending

action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983).

There are significant limitations on *American Pipe* tolling.  First, the filing of a

putative class action complaint tolls the period of limitations only for claims that are

identical to the claims asserted in the putative class action complaint.  *Johnson v.*

*Railway Express Agency*, 421 U.S. 454, 467 n.14 (1975).  Second, a plaintiff who is a

member of a putative class who files an action independent of the class before the

class is certified, or class certification is denied, cannot benefit from *American Pipe*

tolling.  I agree with the analysis of this issue in *In re WorldCom, Inc. Securities*

---

[1]  TRSL quotes *American Pipe* on page 12 of its response, but does not provide a pinpoint citation, or any citation at all, for the quotation.  Similarly, TRSL frequently discusses specific allegations in its complaint, but again provides no pinpoint citations to its complaint.  Both common courtesy and REB Civ. Practice Standard II.D.2. require "specific references in the form of pinpoint citations. . . ." Future filings which do not contain the required pinpoint citations may be stricken.

*Litigation*, 294 F.Supp.2d 431 (S.D.N.Y. 2003).  "(P)laintiffs who choose to file an independent action without waiting to consider the determination of class certification are not entitled to enjoy the benefits of the tolling rule. Applying the tolling doctrine to separate actions filed prior to class certification would create the very inefficiency that *American Pipe* sought to prevent."  *Id*. at 451.

The issue of class certification has not yet been resolved in *In re Qwest*.  At this point in time, TRSL cannot rely on the putative class action in *In re Qwest* as tolling the statute of limitations for other federal securities fraud claims it may wish to pursue.

## V.  § 10(b) CLAIMS

Qwest and the individual defendants argue that TRSL's allegations are not sufficient to state a claim for relief under § 10(b).  Section 10(b) makes it unlawful for any person to employ any manipulative or deceptive device, in contravention of the rules and regulations of the Securities and Exchange Commission (SEC), in connection with the purchase or sale of a security.  15 U.S.C. § 78j(b).  SEC rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. s 240.10b-5 (1994). Liability under Rule 10b-5(b) is predicated on an untrue statement of material fact, or omission to state a material fact.  To state a claim under

§ 10(b) and rule 10b-5(b), a plaintiff must allege that the defendant: a) made an untrue statement of material fact or failed to state a material fact; b) in connection with the purchase or sale of a security; c) with scienter; and d) the plaintiff relied on the misrepresentation and sustained damages as a proximate result of the misrepresentation. *See, e.g., Anixter v. Home-Stake Products*, 77 F.3d 1215, 1225 (10th Cir. 1996). TRSL's § 10(b) claims are based, in large part, on allegations that the defendants made materially false statements.

To some extent, TRSL also alleges § 10(b) claims against certain defendants for "scheme liability" under Rule 10b-5(a) or (c). To state a claim under Rule 10b-5(a) or (c), a plaintiff must allege a) that the defendant committed a manipulative or deceptive act; b) in furtherance of the alleged scheme to defraud; c) scienter; and d) reliance. *See, e.g., In re Global Crossing, Ltd. Securities Litigation*, 322 F.Supp.2d 319, 336 (S.D.N.Y. 2004).

The level of scienter required to support a § 10(b) claim is intent to deceive, manipulate, or defraud. *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001). Proof of recklessness is sufficient to establish a § 10(b) claim. In this context, a defendant acts recklessly when his or her conduct amounts to an extreme departure from the standards of ordinary care, and presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of the danger. *Id*. at 1260. In the context of a claim based on non-disclosure of material facts, a plaintiff must show that the defendant 1) knew of the material fact; and 2) knew that failure to reveal the fact likely would mislead investors. *Fleming*, 264 F.3d at 1261.

## A.  PSLRA Requirements

A section 10(b) claim is a type of fraud claim.  Under FED. R. CIV. P.  9(b), a plaintiff must plead with particularity the facts supporting a fraud claim.  In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA) imposes particular pleading requirements on complaints alleging securities fraud under § 10(b).  15 U.S.C. § 78u-4(b)(1) and (2).  The PSLRA provides:

> (1) Misleading statements and omissions
>
> In any private action arising under this chapter in which the plaintiff alleges that the defendant–
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
>
> (2) Required state of mind
>
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1) and (2).  Generally, the PSLRA is seen as imposing an enhanced standard of pleading that is more strict than that of Rule 9(b).  *Fleming*, 264 F.3d at 1258.

In sum, the PSLRA requires the plaintiffs 1)  to specify each statement alleged to have been misleading, and the reason or reasons the statement is misleading; and

2) with regard to each act or omission alleged to violate § 10(b), to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, i.e. scienter.  **See, e.g., Pirraglia v. Novell, Inc.**, 339 F.3d 1182, 1186 (10th Cir. 2003).   Courts must look to the totality of the pleadings to determine whether the plaintiff's allegations support a strong inference of fraudulent intent, or scienter, as required by the PSLRA.  **Fleming**,  264 F.3d at 1262.  In this context, a strong inference of scienter is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading."  **Adams v. Kinder Morgan, Inc.**, 340 F.3d 1083, 1105 (10th Cir. 2003).  I have considered the totality of the plaintiff's allegations in determining whether those allegations meet the requirements of the PSLRA.

When considering the adequacy of an inference of scienter under the PSLRA, a court must consider negative inferences which may be drawn against the plaintiff. **Pirraglia v. Novell, Inc.**, 339 F.3d 1182, 1187 - 88 (10th Cir. 2003).  In other words, a court must evaluate a plaintiff's suggested inference in the context of other reasonable inferences that may be drawn from the facts alleged.  **Id**.  The inference of scienter suggested by the plaintiff must be strong in light of the overall context of the allegations, including reasonable inferences against the plaintiff's position.  **Id.**

### B.  Materiality

Qwest argues that TRSL's § 10(b) claim fails because TRSL has not alleged a material misrepresentation.  A statement or misrepresentation is not actionable under § 10(b) unless the statement or misrepresentation is material.  For a given fact to be material "there must be a substantial likelihood" that the fact "would have been viewed

by the reasonable investor as having significantly altered the total mix of information made available." ***Garcia v. Cordova***, 930 F.2d 826, 829 (10th Cir. 1991) (quotation omitted).

TRSL alleges that Qwest improperly reported 100 million dollars in revenue in the third quarter of 2000 based on the Genuity transaction. ¶ 134 - 40.  TRSL says this improper recognition of revenue permitted Qwest to report a 12.4 percent increase in revenue for the third quarter of 2000, as compared to the third quarter of 1999. ¶ 135. "QWEST was thus able to claim that it met QWEST's prediction of double digit growth every quarter." *Id.*  A proper report of revenue from the Genuity transaction would have resulted in reported revenue growth of only 9.8 percent, according to TRSL, "a material variation from the earlier predictions of QWEST management." ¶ 136.

TRSL alleges also that Qwest improperly reported 33.6 million dollars in sales revenues based on the ASFB transaction in the second quarter of 2001.  TRSL says this improper recognition of revenue permitted Qwest to report a 12.2 percent increase in revenue for the second quarter of 2001, as compared to the third quarter of 1999. ¶ 191.  This met Qwest's previous estimate of 12 to 13 percent revenue growth for that quarter.  *Id.*  A proper report of revenue from the ASFB transaction would have resulted in reported revenue growth of only 11.5 percent, according to TRSL.  ¶ 192.

Qwest argues that the allegedly improper recognition of revenue on these two transactions is immaterial in comparison to 4.8 billion dollars of revenue recognized in the third quarter of 2000, and the 5.2 billion dollars of revenue recognized in the second quarter of 2001.  It is true that the amounts of revenue that TRSL says were recognized improperly are fairly small in comparison to the total amount of revenue

recognized in the relevant quarters.  However, TRSL has alleged that the improper recognition of this revenue permitted Qwest to claim that it continued to meet its own predictions of revenue growth, rather than falling short of those predictions.  TRSL claims that the difference between meeting expectations and not meeting expectations was material to the market for Qwest stock.  It is conceivable that TRSL could prove that the difference between meeting expectations and not meeting expectations would have been material to a reasonable investor.  TRSL adequately has alleged that the improper reporting of revenue by Qwest was material.

### C.  False & Misleading Statements - Individual Defendants

The individual defendants argue that TRSL has not alleged that they made any false or misleading statements.  TRSL has not cited any portion of the complaint that alleges that any of the individual defendants made any statement that is the basis for TRSL's § 10(b) claim.  However, as noted above, a false statement is not the only possible basis for § 10(b) liability.  TRSL has alleged that the defendants "employed devices, schemes or artifices to defraud. . . ." ¶ 209.  Section 10(b) liability can be based on either "a material misstatement (or omission) **or** the commission of a manipulative act." ***Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.***, 511 U.S. 164, 177 (1994) (emphasis added).

In essence, TRSL alleges that the individual defendants manipulated either the Genuity or ASFB transactions in an effort to improperly  recognize revenue on those transactions.  TRSL alleges that the individual defendants' manipulation of these transactions formed the basis of false statements made by Qwest concerning Qwest's financial status.  Such manipulative acts properly can be the basis for a § 10(b) claim

against the individual defendants even though the individual defendants are not alleged to have made false statements.

### D.  Scienter - Individual Defendants

Again, under the PSLRA the plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1) and (2).  At a minimum, the plaintiff's allegations must support a strong inference of recklessness, which means conduct that amounts "to an extreme departure from the standards of ordinary care, and presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of the danger."  *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1260 (10th Cir. 2001).

A variety of factors may be relevant in considering the plaintiff's scienter allegations.  For example, an allegation that the defendants failed to follow GAAP, by itself, is insufficient to support a strong inference of scienter.  *Adams*, 340 F.3d at 1105 -06.  However, allegations of pervasive and long-standing accounting machinations, or large scale accounting machinations, may support a strong inference of scienter under the PSLRA.  *Id.; In re MicroStrategy, Inc. Securities Litigation*, 115 F.Supp.2d 620, 635 (E.D.Va. 2000) (number, size, timing, nature, frequency, and context of accounting manipulations, combined with other circumstances, can provide support for strong inference of scienter).

Allegations that demonstrate a defendant's motive and opportunity to commit securities fraud also can support a strong inference of scienter.  *Fleming*, 264 F.3d at 1261.  To support a strong inference of scienter by pleading motive and opportunity,

the plaintiff must allege that the defendant benefitted from the alleged fraud in some concrete and personal way, "as when the defendants made material misrepresentations to maintain a high stock price and then sold their own shares at a profit." *Id.*, *citing Novak v. Kaskas*, 216 F.3d 300, 307 - 08 (2nd Cir. 2000).  Generally, allegations concerning a defendant's motive and opportunity to commit securities fraud are not, by themselves, sufficient to support a strong inference of scienter.  *Id.* at 1262.

In addition, a defendant's knowledge of the true material facts also can support a strong inference of scienter.  A manipulation or false statement presents a danger of misleading buyers or sellers only when the manipulation or statement concerns material information.  A scheme or misrepresentation is fraudulent only if the defendant was aware that the falsehood he sought to present would be viewed by the reasonable investor as having significantly altered the total mix of information made available. *Garcia v. Cordova*, 930 F.2d 826, 829 (10th Cir. 1991) (quotation omitted).  Again, to establish a § 10(b) claim based on non-disclosure of material facts, a plaintiff must show that the defendant 1) knew of the material fact; and 2) knew that failure to reveal the fact likely would mislead investors.  *Fleming*, 264 F.3d at 1261.

The essence of TRSL's claim against the individual defendants is that their machinations on the Genuity and ASFB transactions permitted Qwest to conceal the fact that it had not earned as much revenue on these transactions as it claimed.  The plaintiff alleges that each of the individual defendants was involved either in the Genuity transaction or the ASFB transaction.  Only Graham and Arnold are alleged to have been involved in both transactions.  The individual defendants allegedly helped to structure these transactions to permit Qwest to recognize revenue on the transactions

when the defendants knew the recognition of revenue was improper.  According to the plaintiff, the improper recognition of revenue on these transactions permitted Qwest to claim that it was meeting its own projections for revenue growth, as opposed to not meeting those projections.  This difference –  meeting projections versus not meeting projections –  is the basis for the plaintiff's claim that the alleged financial misrepresentations made by Qwest were material, and had an effect on TRSL's decision to purchase or hold Qwest stock.

As discussed above, the magnitude of the improper revenue recognition alleged by TRSL is relatively small, compared to the revenue numbers claimed by Qwest in the relevant quarters.  The size and pervasiveness of the two alleged manipulations undertaken by the individual defendants provide little if any support to a strong inference of scienter.

TRSL also does not allege facts that indicate that the defendants' motive and opportunity to engage in the alleged fraud is a substantial factor in the scienter analysis.  None of the individual defendants is alleged to have profited from sales of Qwest stock during the relevant time, nor has TRSL alleged that the individual defendants benefitted from the alleged fraud in any other concrete, personal way.

Finally, I conclude that the individual defendants' alleged knowledge of the true facts and the materiality of the alleged accounting machinations does not provide substantial support to a strong inference of scienter.  Although TRSL alleges that the individual defendants sought improperly to recognize revenue on the Genuity and ASFB transactions, I find that the complaint does not allege that the individual defendants were aware that the improper recognition of revenue on the transaction or

transactions in which they were involved was likely to deceive Qwest investors. Nothing in the complaint indicates that the individual defendants were aware that the improper recognition of revenue they allegedly engineered was material to a reasonable investor in Qwest stock.

None of the facts alleged indicates that the individual defendants were aware of the larger picture of Qwest's overall revenue.  Rather, the complaint indicates that each individual defendant was concentrating on meeting the revenue goals stated by Qwest management, and the management of his particular division within Qwest.  ¶¶ 110, 148. Absent some indication that the individual defendants were aware that the improper recognition of revenue would materially alter the overall financial picture Qwest presented to the public, the individual defendants cannot be said to have acted with intent to mislead buyers or sellers of Qwest stock when they acted to recognize revenue improperly.  Absent allegations of specific facts that support a conclusion that the individual defendants possessed such knowledge, the allegations concerning the individual defendants' knowledge of the true facts and the materiality of the alleged misrepresentations are not sufficient to support a strong inference of scienter.  The plaintiff cannot rely on generalized imputations of such knowledge to the individual defendants.  *Fleming*, 264 F.3d at 1263-64.

In short, the plaintiff's allegations concerning the individual defendants do not support a strong inference of scienter, as required by the PSLRA.  The individual defendants' motion to dismiss TRSL's § 10(b) claim should be granted.

## VI.  § 18(a)

Liability under § 18 can be established by showing 1) a false or misleading statement or omission; 2) made or caused to be made by a defendant; 3) that is material; 4) contained in an SEC filing; and 5) on which the plaintiff relied in the purchase or sale of a security.  ***See, e.g., Magna Inv. Corp. v. John Does One through Two Hundred***, 931 F.2d 38, 40 (11th Cir. 1991).  In order to plead a § 18(a) claim, a plaintiff must allege that it purchased stock in reliance on a specific document filed with the SEC under the Securities Exchange Act of 1934.  15 U.S.C. § 78r(a).  TRSL concedes that it has not alleged reliance on allegedly fraudulent statements in a relevant SEC fling in its complaint.  *Opposition*, p. 22.

TRSL has withdrawn its § 18(a) claims against the individual defendants.  TRSL concedes that it has not alleged that any of the individual defendants signed the relevant form 10-Ks that are the basis of TRSL's § 18(a) claim.  Absent such an allegation, TRSL concedes that it cannot state a § 18(a) claim against the individual defendants.  TRSL's § 18(a) claim against the individual defendants must be dismissed on this basis.

Qwest argues that TRSL has not alleged actual reliance on allegedly false statements in and SEC filing in support of TRSL's § 18(a) claim against Qwest.  TRSL concedes that such an allegation is necessary to state a claim under § 18(a), and that it has not made such an allegation.  *Opposition*, p. 22.  Absent this key allegation, TRSL's § 18(a) claim against Qwest should be dismissed.

## VII.  § 20(a)

The plaintiff asserts a claim under § 20(a) of the 1934 Act, 15 U.S.C. § 78t, against Qwest.  Under § 20(a), "a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998).  A § 20(a) claim must be predicated on liability under § 10(b) and Rule 10b-5.  Qwest argues that TRSL has not alleged that Qwest had control over a primary violator.

TRSL alleges that the "defendants are controlling persons of the defendant QWEST as defined in Section 20(a) . . . ." ¶ 232.  Focusing only on Qwest, this sentence alleges that Qwest is a controlling person of Qwest.  TRSL does not allege that Qwest was a controlling person as to any primary violator other than Qwest. Section 20(a) imposes vicarious liability for the acts of a primary violator.  If Qwest is both the controlled person, the primary violator, and the controlling person, vicarious liability is of no import because Qwest is primarily liable.  In this context, a § 20(a) claim is simply an irrelevant duplication of the underlying § 10(b) claim.  Absent an allegation that Qwest controlled another defendant who is a primary violator, TRSL's § 20(a) claim against Qwest must be dismissed.

The individual defendants also argue that TRSL has not sufficiently alleged that any of the individual defendants controlled a person who committed a primary violation of the securities laws.  SEC regulations define control as "the possession, direct or indirect, of the power to direct or cause the direction of management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.  The plaintiff alleges that the individual defendants are controlling

persons of Qwest.  ¶ 232.  Some of the individual defendants held management authority in certain divisions of Qwest.  However, the allegations in the complaint do not indicate that any of the individual defendants controlled Qwest with regard to the primary securities law violation alleged against Qwest.  Again, the primary violation alleged is that Qwest used improperly recognized revenue from the Genuity and ASFB transactions to inflate Qwest's overall revenue picture to make it appear that Qwest was meeting its stated goals for revenue growth.  In contrast, there is no allegation that any individual defendant had management authority over Qwest's overall revenue picture or financial reporting to the public.  Absent such authority, none of the individual defendants can be said to be control persons with respect to the primary securities law violation alleged against Qwest.  TRSL's § 20(a) claim against the individual defendants must be dismissed.

## VIII.  NEGLIGENT MISREPRESENTATION - STATUTE OF LIMITATIONS

TRSL asserts a state law claim for negligent misrepresentation.  Again, TRSL's complaint is related only to the Genuity and ASFB transactions, and TRSL's notice of the alleged fraud in these transactions controls the statute of limitations analysis.

Qwest argues that the two year statute of limitations stated in §13-80-102(1)(a), C.R.S., bars TRSL's state law negligent misrepresentation claim. Section 102(1)(a) applies to "(t)ort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, (and other actions)."  In contrast, the three year statute of limitations of §13-80-101(c), C.R.S., is applicable to civil actions "for fraud, misrepresentation, concealment, or deceit . . . ."  I previously have held that the three year period of limitations of §13-80-101(c) is applicable to negligent

misrepresentation claims against Qwest based on the type of misrepresentation at issue here. *Stichting Pensioenfonds, ABP v. Qwest*, No. 04-cv-00238-REB-CBS (now consolidated with *In re Qwest*), order filed March 28, 2005, p. 40.

Qwest argues that TRSL was on notice of its negligent misrepresentation claim no later than early February, 2002. Again, by that date at least a dozen lawsuits asserting § 10(b) claims were pending against Qwest, Qwest had disclosed that the SEC had begun an informal investigation into Qwest's accounting, and there had been substantial press coverage concerning suspected fraud at Qwest. I agree that as of February 2002, TRSL was on notice of a variety of bases for negligent misrepresentation claims against Qwest.

TRSL first asserted its negligent misrepresentation claim on April 1, 2004. To the extent this claim is based on the Genuity and ASFB transactions, the claim is not barred by the statute of limitations. As discussed above, the current record indicates that TRSL was not on notice of its claims related to the Genuity and ASFB transactions until February 25, 2003. TRSL complaint was filed less than 14 months later. TRSL's negligent misrepresentation claim is not barred by the statute of limitations.

### IX.  STATE LAW CLAIMS
### FAILURE TO STATE A CLAIM

#### A.  Colorado Securities Act

TRSL asserts a claim under §11-51-604(3), C.R.S., part of the Colorado Securities Act. Section 604(3) provides, in relevant part

> (3) Any person who recklessly, knowingly, or with an intent to defraud sells or buys a security in violation of section 11-51-501(1) . . . is liable to the person buying or selling such security . . . in connection with the

violation for such legal or equitable relief that the court deems
appropriate, including rescission, actual damages, interest at the statutory
rate, costs, and reasonable attorney fees.

Section 11-51-501(1) provides

(1) It is unlawful for any person, in connection with the offer, sale, or
purchase of any security, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a
material fact necessary in order to make the statements made, in the light
of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice, or course of business which operates
or would operate as a fraud or deceit upon any person.

Privity.  The defendants argue that the language of §604(3) indicates that a

claim for violation of that section, based on an underlying violation of §501(1), can be

brought only when there is privity between the plaintiff and the defendant; only when

the plaintiff alleges that the plaintiff purchased or sold a security from or to the

defendant.

Although §604(3) can be read to include a privity requirement, I find that the

holding of the Colorado Supreme Court in *Rosenthal v. Dean Whitter Reynolds, Inc.*,

precludes such a reading.  908 P.2d 1095 (Colo. 1995).  The *Rosenthal* court applied

§11-51-125(2), the predecessor of §604(3).  Section 125(2) read,

Any person who recklessly, knowingly, or with an intent to defraud sells or
buys a security in violation of section 11-51-123 [the predecessor of
§ 501(1)] is liable to the person buying or selling a security in connection
with the violation for such legal or equitable relief which the court deems
appropriate, including rescission, actual damages, interest at the statutory
rate, costs, and reasonable attorney fees.

The language of §125(2) is nearly identical to that of §604.  The *Rosenthal* court held,

to state a claim pursuant to section 11-51-125(2), a plaintiff must allege the following:  (1) that the plaintiff is a purchaser or seller of a security;  (2) that the security is a "security";  (3) that the defendant acted with the requisite scienter;  (4) that the defendant's conduct was in connection with the purchase or sale of a security;  (5) that the defendant's conduct was in violation of section 11-51-123 [the predecessor of § 501(1)];  and (6) that plaintiff relied upon defendant's conduct to his or her detriment, or that defendant's conduct caused plaintiff's injury.

*Rosenthal*, 908 P.2d at 1102.  These elements, adopted by the Colorado Supreme Court, do not include a privity requirement.  TRSL's claim under §604(3) is not subject to dismissal for failure to allege privity between TRSL and the defendants.

Scienter.  As noted in ***Rosenthal***, a plaintiff asserting a claim under the provisions of the Colorado Securities Act discussed above must allege, *inter alia*, that the defendant acted with the requisite scienter.  908 P.2d at 1102.  The provisions of §11-51-501(1) closely parallel those of Rule 10b-5(b).  When parallel provisions of Colorado and federal law are involved, Colorado courts find federal authorities to be highly persuasive in interpreting the Colorado Securities Act.  ***See, e.g., Lowery v. Ford Hill Inv. Co.***, 556 P.2d 1201, 1205 (Colo. 1976).

As discussed in Section V-D above, the allegations in the complaint do not indicate that any of the individual defendants were aware of the materiality of the manipulations they allegedly engineered, or the materiality of the false statements allegedly made possible by their manipulations.  Absent awareness of the alleged materiality of their actions, the individual defendants cannot be said to have acted with intent to defraud under the standards of § 10(b) and Rule 10b-5, or under the parallel provisions of the Colorado Securities Act.  TRSL's Colorado Securities Act claim must be dismissed as to the individual defendants.

## B.  Negligent Misrepresentation

Qwest argues that the plaintiff's negligent misrepresentation claim must be

dismissed because Qwest owed no duty to the plaintiff, and because the economic loss

rule bars such a claim.

The Colorado courts have adopted the Restatement (Second) of Torts § 552(1)

(1976), and its definition of a claim of negligent misrepresentation.

> One who, in the course of his business, profession or employment, or in
> any other transaction in which he has a pecuniary interest, supplies false
> information for the guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.

*Fluid Technology, Inc. v. CVJ Axles, Inc.*,  964 P.2d 614, 616 (Colo.App.,1998)

(citing  Restatement (Second) of Torts § 552(1) (1976)).  The plaintiff has alleged that

the defendants, in the course of their business, profession, or employment, supplied

false information to the market concerning Qwest's business, which information was

known to be used as a guide by those investing in Qwest stock, and which information

was known to have an affect on the price of Qwest stock.  The plaintiffs claim to have

relied justifiably on the false information provided by the defendants, and to have

suffered a financial loss as a result of their reliance on this information.  ¶ 53.  The

facts alleged by the plaintiff are sufficient to state a claim for negligent

misrepresentation.

Qwest argues that it cannot be liable on such a claim because a corporation has

no duty to its shareholders.  In supplying information for the guidance of others in

business transactions, one often will face the foreseeable risk that inaccurate

information may cause harm to those relying on the information.  In this context, one

26

undertakes a duty to exercise reasonable care in providing information.  The information in question in this case is information on which investors routinely, foreseeably, and justifiably rely.  In this context, the defendants had a duty to exercise reasonable care.  Further, Qwest is liable for the actions of its employees and agents.  Many of the defendants are employees and agents of Qwest  who allegedly supplied false information to investors.

Qwest argues also that the economic loss rule prohibits the plaintiff from pursuing a negligent misrepresentation claim.  The Colorado Supreme Court has said that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." ***Grynberg v. Agri Tech, Inc.***, 10 P.3d 1267, 1269 (2000). The court described the rule in similar terms in ***Town of Alma v. Azco Construction, Inc.***, 10 P.3d 1256, 1264 (2000).  The rule "serves to maintain a distinction between contract and tort law." ***Id***. at 1262.

In the present case, there is no need to preserve this distinction.  TRSL does not assert any claims that sound in contract.  Its negligent misrepresentation claim is based on the duty, established in Colorado law, to exercise reasonable care when supplying information for the guidance of others in their business transactions.  Assuming the allegations of the Complaint to be true, the plaintiff may be able to establish that Qwest and the other defendants tortiously breached this duty.

The individual defendants argue that the plaintiff has not alleged that the individual defendants were involved in the public pronouncement of the allegedly false financial reports that are the basis of TRSL's complaint.  I conclude that involvement in

Qwest's public pronouncements is not required to support TRSL's negligence claim. TRSL has alleged that the individual defendants knew that the recognition of revenue on the transactions in which they were involved was improper and false, but the defendants nonetheless structured the transactions to permit their divisions to report the false recognition of revenue.  Further, the allegations in the complaint indicate that the individual defendants were aware that this false information would be published by Qwest in reporting its financial results.  This is sufficient to allege that the individual defendants negligently supplied false information for the guidance of others.

The individual defendants argue also that the plaintiff has not alleged that the allegedly false information caused TRSL to engage in transactions in Qwest stock. TRSL alleges that it "relied upon the said false and misleading representations in purchasing the securities of QWEST during the period of wrongdoing set forth in this Complaint."  ¶ 53.  Under the applicable notice pleading standards, this allegation is sufficient.

In short, applying the notice pleading standard of FED. R. CIV. P. 8, I conclude that the plaintiff has stated a state law claim for negligent misrepresentation against the defendants.

### C.  Common Law Fraud

Qwest argues that TRSL has not alleged facts supporting an inference of actual reliance on Qwest's allegedly fraudulent statements.  TRSL essentially concedes that this is true.  *Opposition*, p. 35.  On this basis, Qwest's motion to dismiss TRSL's common law fraud claim should be granted.

As discussed above, TRSL's allegations bear no indication that the individual defendants knew that the manipulations in which they participated would form the basis of materially false statements that would be likely to mislead Qwest investors.  Again, absent knowledge that the improper recognition of revenue would be material to a reasonable Qwest investor, the individual defendants cannot be said to have acted with fraudulent intent; with intent to mislead buyers or sellers of Qwest stock.  The individual defendants' motion to dismiss TRSL's common law fraud claim should be granted.

## X.  AMENDMENT OF COMPLAINT

TRSL repeatedly states its intention to amend its complaint in its opposition to the motion to dismiss.  To the extent TRSL's opposition can be read to include a motion to amend its complaint, such a motion is improper.  D.C.COLO.LCivR 7.1 C prohibits the inclusion of a motion in a response or reply to another motion.  I will not view TRSL's opposition as including a motion to amend its complaint.

## XI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1)  That defendant Qwest Communications International, Inc.'s, motion to dismiss [#37], filed September 7, 2004, is **GRANTED** as to the plaintiff's claim under § 18(a) (Count Two), § 20(a) (Count Three), and the plaintiff's claim for common law fraud (Count Six);

2)  That defendant Qwest Communications International, Inc.'s, motion to dismiss [#37], filed September 7, 2004, otherwise is **DENIED**;

3)  That the motion to dismiss of defendants Weston, Eveleth, Walker, and Treadway [# 54], filed November 9, 2004, is **GRANTED** as to the plaintiff's claims

under § 10(b) (Count One), § 18(a) (Count Two), § 20(a) (Count Three), the Colorado

Securities Act (Count Four), and plaintiff's common law fraud claim (Count Six);

4)  That the motion to dismiss of defendants Weston, Eveleth, Walker, and

Treadway [# 54], filed November 9, 2004, otherwise is **DENIED**;

5) That defendant Douglas Hutchins' motion to dismiss [# 61], filed December

16, 2004, is **GRANTED** as to the plaintiff's claims under § 10(b) (Count One), § 18(a)

(Count Two), § 20(a) (Count Three), the Colorado Securities Act (Count Four), and

plaintiff's common law fraud claim (Count Six); and

6) That defendant Douglas Hutchins' motion to dismiss [# 61], filed December

16, 2004, otherwise is **DENIED**.

Dated September 23, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge